IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| RHONDA MILLER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 13-3993 |
| | : | |
| KUTZTOWN UNIVERSITY and | : | |
| DR. ROBERT REYNOLDS, | : | |
| Defendants. | : | |

M E M O R A N D U M

STENGEL, J.                                                          December 10, 2013

This is a civil rights action brought under Title IX against Defendant Dr. Robert

Reynolds and his employer Kutztown University. The plaintiff, a former Kutztown

student, alleges that Dr. Reynolds sexually harassed her while serving as her academic

advisor.  Kutztown University moves to dismiss the counts against it. For the foregoing

reasons, I will deny Kutztown University's motion to dismiss and allow the case to

proceed against Kutztown University.

I.      BACKGROUND

In January 2010, the plaintiff transferred to Kutztown University (Kutztown). In

June 2011, she was accepted as an undergraduate honors student into the General Studies

Major with her individualized program of study focusing on Pennsylvania German

Family History Research. Defendant Dr. Robert Reynolds, a professor and Executive

Director of the Pennsylvania German Cultural Heritage Center (PGCHC) at Kutztown,

was assigned to be the plaintiff's academic advisor at that time. As part of her

individualized program, the plaintiff was required to work closely with Dr. Reynolds and the PGCHC. Dr. Reynolds was the instructor for much of the plaintiff's individualized coursework.[1]

In July 2011, Dr. Reynolds allegedly began to make uninvited and unwanted sexually-offensive remarks and advances towards the plaintiff.[2] The plaintiff objected to these unwanted advances, but Dr. Reynolds continued his advances. In September 2011, during a PGCHC-sponsored event, Dr. Reynolds allegedly made several sexualized comments about the plaintiff in the presence of his male colleagues. Additionally, during a meeting at his home, Dr. Reynolds allegedly groped and kissed the plaintiff without her consent. Dr. Reynolds allegedly threatened to commit suicide if the plaintiff reported him and also threatened to sabotage her academic career if he did not give in to his sexual advances.

In January 2012, the plaintiff requested a new academic advisor because of Dr. Reynolds's persistent sexual harassment and the severe emotional distress it caused her. On January 22, 2012, the plaintiff and her husband sent an email to Dr. Reynolds informing him of her request for a new advisor and demanding that he cease further contact with the plaintiff. On January 23, 2012, the plaintiff and her husband contacted

---

[1] The plaintiff claims that as a result of their advisor-advisee relationship, Dr. Reynolds became aware that the plaintiff had suffered emotional trauma from a childhood assault. Though not entirely clear from the pleadings, it appears to be of some relevance to the plaintiff's claims.

[2] For example, Dr. Reynolds frequently told the plaintiff she was "hot" and "sexy" and that "they were going to be lovers." Dr. Reynolds also asked the plaintiff to have sex with him on several occasions and to stay at his home while his family was on vacation in order to "have sex." The plaintiff alleges that Dr. Reynolds sent her "hundreds of unsolicited text messages, many of which included sexualized remarks." Am. Compl. at ¶¶ 17-21. He also allegedly told her he "loved her" and "it was her fault." He allegedly suggested they share a hotel room during field trips. Id. at ¶ 26.

Kutztown to inform them of Dr. Reynolds's sexual harassment.[3] The complaint alleges that Kutztown failed to investigate the allegation and undertake remedial action.

Thereafter, the plaintiff claims that the defendants "commenced a campaign of retaliation" against her by: excluding her from a lecture series which she helped organize, preventing her from meeting with the visiting scholar to procure research for a paper presentation at an academic conference, revoking her Pennsylvania German heritage Center Library privileges, and excluding her from participating in any PGCHC events.[4] In February 2012, Edward Quinter, a professor of German Studies, also refused to work with the plaintiff on an honors research project, after previously promising his assistance.

As a result of this retaliation, the plaintiff was forced to withdraw from her academic program in March 2012.[5] In April 2012, the plaintiff registered another complaint with Kutztown about Dr. Reynolds's behavior and the failure of Kutztown staff to investigate the previous complaint. Kutztown subsequently investigated her complaint and found that Dr. Reynolds did, in fact, act "inappropriately." Nonetheless, no disciplinary action against Dr. Reynolds was taken.

---

[3] Specifically, the plaintiff and her husband contacted John Green, Associate Vice President of University Advancement, who forwarded the complaint to Jason Ketter, Executive Director, and Jesus Pena, Associate Vice President of Equity and Compliance. Am. Compl. at ¶ 30.

[4] This included events at which Dr. Reynolds was not a participant. See Am. Compl. at ¶¶ 33-39.

[5] Kutztown construes this part of the plaintiff's complaint as meaning that the plaintiff withdrew from the university entirely; however, Kutztown offers no evidence to rebut this. The plaintiff clarified in her response that she withdrew from her "academic program" only. At this stage, I find no reason to think withdrawal from an academic program necessarily means withdrawal from the university. See Lum v. Bank of Am., 361 F.3d 217, 222 (3d Cir. 2004)("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The plaintiff further claims that this retaliation is ongoing because she has been deprived of opportunities for awards and scholarships, thereby adversely affecting her career opportunities. In July 2012, Kutztown revoked the plaintiff's invitation to a previously scheduled campus visit from the German Ambassador to the United States. On June 30, 2013, the plaintiff was told by Dr. David Valuska, an emeritus professor of history and the President of the PGCHC Advisory Board, that he would not assist her with her honors research project because he did not want to have anything to do with her since he "had been told [she] was in trouble with the University."[6] On October 15, 2013, the plaintiff received an email from Robert Watrous, Associate Vice Provost, informing her that she was not permitted to participate in co-curricular activities.

Subsequently, the plaintiff filed this suit claiming: 1) a violation of Title IX against Kutztown University for retaliation (Count I), 2) assault and battery against Dr. Reynolds (Count II), and 3) intentional infliction of emotional distress against Dr. Reynolds (Count III).[7] The plaintiff seeks compensatory and punitive damages along with fees and costs.[8] In response, Kutztown filed a motion to dismiss Count I under Rule 12(b)(6).

---

[6] See Am. Compl. at ¶ 44.

[7] The original complaint was filed on July 10, 2013. Since the claims against both defendants involve the same nucleus of operative facts, the defendants have been joined in this same suit. After being ordered to respond, the defendants each filed a motion to dismiss under Rule 12(b)(6). In response, the plaintiff filed an amended complaint.

Both defendants have filed a motion to dismiss the amended complaint under Rule 12(b)(6). Because the claims against each differ, their arguments as to why these claims should be dismissed under Rule 12(b)(6) also differ. For the sake of clarity, I have addressed each defendant's motion with its own memorandum.

[8] The plaintiff seeks punitive damages from Dr. Reynolds only.

## II.      STANDARD OF REVIEW UNDER 12(b)(6)[9]

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

for failure to state a claim upon which relief can be granted examines the legal

sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual

allegations must be sufficient to make the claim for relief more than just speculative.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to

grant a motion to dismiss, a federal court must construe the complaint liberally, accept all

factual allegations in the complaint as true, and draw all reasonable inferences in favor of

the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944

(3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all

of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules

require a "short and plain statement" of the claim that will give the defendant fair notice

of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must

allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither

"bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse

v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern

Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

The claim must contain enough factual matters to suggest the required elements of

the claim or to "raise a reasonable expectation that discovery will reveal evidence of"

---

[9] This court has jurisdiction to hear this case under 28 U.S.C. §§ 1331 and 1391 because the plaintiff's claims are substantively based in Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

those elements.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)

(quoting Twombly, 550 U.S. at 556). A court "may dismiss a complaint only if it is clear

that no relief could be granted under any set of facts that could be proved consistent with

the allegations." Brown v. Card Service Center, 464 F.3d 450, 456 (3d Cir. 2006)(quoting

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III.    DISCUSSION

The only claim asserted against Kutztown is a Title IX retaliation claim (Count I).

To state a prima facie case for retaliation under Title IX, the plaintiff must show that: 1)

she engaged in a protected activity; 2) she experienced a materially adverse action after

or contemporaneously with the protected activity; and 3) a causal link between the

protected activity and the adverse action exists. Weston v. Pennsylvania, 251 F.3d 420,

430 (3d Cir. 2001). See also Yan Yan v. Penn State Univ., No. 12-3481, 2013 WL

2996192, at *3 (3d Cir. Jun. 18, 2013) (discussing the Title IX prima facie case in context

of student sexual harassment claims).

Kutztown argues that the Title IX claim against it can't proceed because the

alleged retaliatory actions by its agents cannot be attributed to it under a theory of

respondeat superior. Kutztown cites Gebser v. Lago Vista Independent Sch. Dist., 524

U.S. 274, 282-90 (1998), and Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir.

2005) to supports this argument. Gebser and Bostic discuss how a school district cannot

be liable for Title IX sexual harassment violations by a teacher under the theory of

respondeat superior *when the school district has not been given actual notice of the

offenses*. Gebser, 524 U.S. at 285-290; Bostic, 418 F.3d at 361.

In this case however, the plaintiff had provided Kutztown of actual notice of the sexual harassment. She is claiming that Kutztown violated Title IX, not because Kutztown was responsible for the actions of Dr. Reynolds before it became aware of the harassment, but instead because Kutztown and its agents retaliated against her after she made her complaint.[10] "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). See also Atkinson v. LaFayette College, 460 F.3d 447, 451-52 (3d Cir. 2006).

Kutztown also argues that Title IX retaliation claims must be proven according to traditional principles of but-for causation. Kutztown bases its argument on the Supreme Court's recent decision in University of Texas Southwestern Med. Ctr. V. Nassar, 133 S. Ct. 2517, 2533 (Jun. 24, 2013), which held that a retaliation claim under Title VII required a showing of but-for causation. While it is true that the legal analysis in Title VII and Title IX is often similar, the Court made clear in Nassar that its holding regarding but-for causation applied to Title VII, not Title IX.[11] The Court distinguished its holding in Jackson, which specifically addressed retaliation under Title IX, from its analysis in

---

[10] The defendant argues that the holding in Gebser expressly applies to plaintiff's retaliation claim, even though retaliation was not raised in Gebser. However, Kutztown offers no case law to support this argument.

[11] Kutztown further supports this argument with non-binding case law that indicates Title IX and Title VII retaliation claims should be analyzed in the same way. See Toth v. California Univ. of Pa, 844 F.Supp.2d 611, 642 (W.D.Pa. 2012) (citing Dawn L. v. Greater Johnstown Sch. Dist., 586 F.Supp.2d 332, 373-74 (W.D.Pa. 2008)); Fuhr v. Hazel Park School Dist., 710 F.3d 668, 673 (6th Cir. Mar. 19, 2013); Summa v. Hofstra Univ., 708 F.3d 115, 117 (2d Cir. Feb. 21, 2013); Bowers v. Board of Regents of Univ. System of Georgia, 509 Fed.Appx. 906 (11th Cir. Feb. 15, 2013); Milligan v. Board of Trustees of Southern Illinois Univ., 686 F.3d 378, (7th Cir. 2012); Emeldi v. University of Oregon, 698 F.3d 715, 724 (9th Cir. 2012). However, all of these decisions came prior to Nassar.

Nassar because Title IX is a "broadly phrased antidiscrimination statute" while "Title VII is a detailed statutory scheme." Nassar, 133 S. Ct. at 2529-30. For these reasons, I do not accept Kutztown's argument that but-for causation applies and, thereby, undercuts the plaintiff's cause of action.[12]

The plaintiff has pled that members of the Kutztown faculty denied her access to academic assistance and resources related to her individualized course of study, only after she complained to staff at the university about Dr. Reynolds's sexual harassment.[13] As a result, she subsequently was forced to withdraw from her individualized course of study. From the timing of these events and remarks made by faculty, it is reasonable to infer that the adverse actions taken against the plaintiff were casually related to her making a complaint against Dr. Reynolds.[14] The facts she have offered are enough to make out a prima facie retaliation claim under Title IX.

---

[12] Even if but-for causation were required under Title IX, this standard is likely not applicable at the pleading stage. Courts have rejected the argument that the but-for standard, which is necessary to make a case under the Age Discrimination in Employment Act, be used at the pleading stage. See Gross v. FBL Financial Servs., 557 U.S. 167, 176 (2009)(finding that but-for causation is needed under the ADEA); Smith v. Giant Eagle, Inc., No. 2:10–cv–01644, 2011 WL 1706520, at *3 (W.D.Pa. May 4, 2011)("[W]hile the Gross decision articulated the proper standard of proof to be applied under the ADEA, there is nothing to suggest that the Supreme Court intended for this standard to apply at the pleading stage."); Prisco v. Methodist Hospital, No. 10–cv–3141, 2011 WL 1288678, at *3 (E.D.Pa. Apr. 4, 2011) ("[T]he holding in Gross concerned only the trial phase of discrimination proceedings, and has been held inapplicable to motions to dismiss.").

[13] Kutztown argues that the refusal by Dr. Valuska, who was an emeritus or retired professor at the time, should not be considered an act of retaliation because he cannot be considered an agent of Kutztown as an emeritus professor. His status as an emeritus professor is not dispositive with regards to his relationship with the university. While it is unclear whether he was an agent of the university or not as an emeritus professor, Dr. Valuska was also president of the PGCHC Advisory Board at the time he refused to help the plaintiff with her honors research project. Viewing these facts in the light most favorable to the plaintiff, Dr. Valuska could be considered an agent of Kutztown. What his exact legal relationship with the university was at that time is an issue to be explored more during discovery.

[14] Kutztown contends that the restrictions on the plaintiff were instituted simply because she had asked to not have contact with Dr. Reynolds. While there may be some dispute as to the reason why the plaintiff was prohibited from engaging in activities related to her chosen course of study, her pleading is enough to allow this dispute to be explored further in discovery.

## IV.    CONCLUSION

For the reasons explained above, I will deny Kutztown University's motion to dismiss Count I.

An appropriate Order follows.