# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **RHONDA MILLER,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 13-3993 |
| | : | |
| **KUTZTOWN UNIVERSITY and** | : | |
| **DR. ROBERT REYNOLDS,** | : | |
| Defendants. | : | |

## M E M O R A N D U M

**STENGEL, J.**  December 10, 2013

This is a civil rights action brought under Title IX against Defendant Dr. Robert Reynolds and his employer Kutztown University. The plaintiff, a former Kutztown student, alleges that Dr. Reynolds sexually harassed her while serving as her academic advisor. Dr. Reynolds moves to dismiss the counts against him. For the foregoing reasons, I will deny Dr. Reynolds's motion to dismiss and allow the case to proceed against him.

## I. BACKGROUND

In January 2010, the plaintiff transferred to Kutztown University (Kutztown). In June 2011, she was accepted as an undergraduate honors student into the General Studies Major with her individualized program of study focusing on Pennsylvania German Family History Research. Defendant Dr. Robert Reynolds, a professor and Executive Director of the Pennsylvania German Cultural Heritage Center (PGCHC) at Kutztown, was assigned to be the plaintiff's academic advisor at that time. As part of her

individualized program, the plaintiff was required to work closely with Dr. Reynolds and the PGCHC. Dr. Reynolds was the instructor for much of the plaintiff's individualized coursework.[1]

In July 2011, Dr. Reynolds allegedly began to make uninvited and unwanted sexually-offensive remarks and advances towards the plaintiff.[2] The plaintiff objected to these unwanted advances, but Dr. Reynolds continued his advances. In September 2011, during a PGCHC-sponsored event, Dr. Reynolds allegedly made several sexualized comments about the plaintiff in the presence of his male colleagues. Additionally, during a meeting at his home, Dr. Reynolds allegedly groped and kissed the plaintiff without her consent. Dr. Reynolds then allegedly threatened to commit suicide if the plaintiff reported him and threatened to sabotage her academic career if she did not give in to his sexual advances.

In January 2012, the plaintiff requested a new academic advisor because of Dr. Reynolds's persistent sexual harassment and the severe emotional distress it caused her. On January 22, 2012, the plaintiff and her husband sent an email to Dr. Reynolds informing him of her request for a new advisor and demanding that he cease further contact with the plaintiff. On January 23, 2012, the plaintiff and her husband contacted

---

[1] As a result of their advisor-advisee relationship, Dr. Reynolds became aware that the plaintiff had suffered emotional trauma from a childhood assault. Though not entirely clear from the pleadings, it appears to be of some relevance to the plaintiff's claims.

[2] For example, Dr. Reynolds frequently told the plaintiff she was "hot" and "sexy" and that "they were going to be lovers." Dr. Reynolds also asked the plaintiff to have sex with him on several occasions and to stay at his home while his family was on vacation in order to "have sex." The plaintiff alleges that Dr. Reynolds sent her "hundreds of unsolicited text messages, many of which included sexualized remarks." Am. Compl. at ¶¶ 17-21. He also allegedly told her he "loved her" and "it was her fault." He allegedly suggested they share a hotel room during field trips. Id. at ¶ 26.

Kutztown to inform them of Dr. Reynolds's sexual harassment.[3] Kutztown failed to investigate the allegation and undertake remedial action.

Thereafter, the plaintiff claims that the defendants "commenced a campaign of retaliation" against her by: excluding her from a lecture series which she helped organize, preventing her from meeting with the visiting scholar to procure research for a paper presentation at an academic conference, revoking her Pennsylvania German Heritage Center Library privileges, and excluding her from participating in any PGCHC events.[4] In February 2012, Edward Quinter, a professor of German Studies, refused to work with the plaintiff on an honors research project, after previously promising his assistance.

As a result of this retaliation, the plaintiff was forced to withdraw from her academic program in March 2012. In April 2012, the plaintiff registered another complaint with Kutztown about Dr. Reynolds's behavior and the failure of Kutztown staff to investigate the previous complaint. Kutztown subsequently investigated her complaint and found that Dr. Reynolds did, in fact, act "inappropriately." Nonetheless, no disciplinary action against him was taken.

The plaintiff further claims this retaliation is ongoing because she has been deprived of opportunities for awards and scholarships, thereby adversely affecting her career opportunities. In July 2012, Kutztown revoked the plaintiff's invitation to a previously scheduled campus visit from the German Ambassador to the United States. On

---

[3] Specifically, the plaintiff and her husband contacted John Green, Associate Vice President of University Advancement, who forwarded the complaint to Jason Ketter, Executive Director, and Jesus Pena, Associate Vice President of Equity and Compliance. Am. Compl. at ¶ 30.

[4] This included events at which Dr. Reynolds was not a participant. See Am. Compl. at ¶¶ 33-39.

June 30, 2013, the plaintiff was told by Dr. David Valuska, an emeritus professor of history and the President of the PGCHC Advisory Board, that he would not assist her with her honors research project because he did not want to have anything to do with her since he "had been told [she] was in trouble with the University."[5] On October 15, 2013, the plaintiff received an email from Robert Watrous, Associate Vice Provost, informing her that she was not permitted to participate in co-curricular activities.

Subsequently, the plaintiff filed this suit claiming: 1) a violation of Title IX against Kutztown University for retaliation (Count I), 2) assault and battery against Dr. Reynolds (Count II), and 3) intentional infliction of emotional distress against Dr. Reynolds (Count III).[6] The plaintiff seeks compensatory and punitive damages along with fees and costs.[7] In response Dr. Reynolds filed a motion to dismiss Counts II and III under Rule 12(b)(6).[8]

## II.　STANDARD OF REVIEW UNDER 12(b)(6)[9]

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal

---

[5] See Am. Compl. at ¶ 44.

[6] The original complaint was filed on July 10, 2013. Since the claims against both defendants involve the same nucleus of operative facts, the defendants have been joined in this same suit. After being ordered to respond, the defendants each filed a motion to dismiss under Rule 12(b)(6). In response, the plaintiff filed an amended complaint.

[7] The plaintiff seeks punitive damages from Dr. Reynolds only.

[8] Both defendants have filed a motion to dismiss the amended complaint under Rule 12(b)(6). Because the claims against each differ, their arguments as to why these claims should be dismissed under Rule 12(b)(6) also differ. For the sake of clarity, I have addressed each defendant's motion with its own memorandum.

[9] This court has jurisdiction to hear this case under 28 U.S.C. §§ 1331 and 1391 because the plaintiff's claims are substantively based in Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

sufficiency of the complaint.[10]  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). A court "may dismiss a complaint only if it is clear

---

[10] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id.

that no relief could be granted under any set of facts that could be proved consistent with the allegations." Brown v. Card Service Center, 464 F.3d 450, 456 (3d Cir. 2006)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

## III. DISCUSSION

### A. Sovereign Immunity

Dr. Reynolds argues that Counts II and III, against him individually, should be dismissed because he is entitled to sovereign immunity. Whether Dr. Reynolds is entitled to sovereign immunity is a matter of state law. See Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000). Under Pennsylvania law, the Commonwealth and its employees "acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit" unless the legislature has specifically waived immunity.[11] 1 Pa. C.S. § 2310.

If an employee acts outside the scope of his duties, he is not entitled to sovereign immunity. In Pennsylvania, "scope of employment" is determined according to whether an employee's actions were: 1) of the kind an employee is expected to perform; 2) substantially within authorized time and space limits; and 3) intended, at least in part, to serve one's employer. Brumfield, 232 F.3d at 380, citing Restatement (Second) of

---

[11] There are nine legislatively created exceptions to immunity: 1) vehicle liability; 2) medical/professional liability; 3) care, custody, or control of personal property; 4) Commonwealth real estate, highways, and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody, and control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoid and vaccines. 42 Pa. C.S. § 8522(b). None of these exceptions apply in this case. However, whether an employee is entitled to immunity within the statutory definition is a separate inquiry from whether his actions fall within the exceptions.

Agency § 228(1) (1958).[12] If force is intentionally used by an employee, such use of force would be expected by an employer in order for an employee to fulfill his employment duties. Restatement (Second) of Agency § 228(1) (1958). See also Gerhart v. Com. of Penn., No. 09–cv–1145, 2009 WL 2581715, at *8-9 (E.D. Pa. Aug. 13, 2009)(discussing Strothers v. Nassan, No. 08–1624, 2009 WL 976604, at *7 (W.D.Pa. Apr. 9, 2009)).

Dr. Reynolds's employment as a professor at a state university would make him an employee within the statutory definition. See Ismael v. Ali, 276 Fed.Appx. 156, 158 (3d Cir. 2008)(finding that professors at state universities are employees entitled to sovereign immunity). However, there is no question that allegations of sexual assault and battery would not fall within the duties of his position as a history professor.[13] Given that the plaintiff has plausibly argued that the alleged assault and battery would not fall within Dr. Reynolds's duties as an academic advisor, the plaintiff has met her burden in overcoming a motion to dismiss on this issue.

---

[12] See also Butler v. Flo–Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. Ct. 1989) (adopting scope of employment definition in § 228); Johnson v. Knorr, No. 01–3418, 2005 WL 3021080, at *8 n. 5 (E.D.Pa. Oct. 31, 2005) (rev'd on other grounds); Aliota v. Graham, 984 F.2d 1350, 1359 (3d Cir.1993).

[13] Dr. Reynolds argues that these actions are within the scope of his employment because they took place at work events or were related to his position as the plaintiff's advisor. To argue that he would be immune from the legal ramifications of kissing and touching the plaintiff in a sexually harassing way simply because these actions took place during a *work* meeting stretches the bounds of immunity beyond which it was intended.

See Kintzel v. Kleeman, No. 3:13cv163, 2013 WL 4498969, at *3 (M.D.Pa. Aug 19, 2013)("it is without question that the sexual assault and battery that is the basis of plaintiff's complaint is not within the scope of defendant's employment…. It is not the sort of conduct he is employed to perform, and it is not actuated in any way to serve the Commonwealth."); Fitzgerald v. McCutcheon, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979)("If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment.")(citations omitted).

Furthermore, what constitutes the "scope of employment" for a particular position is typically a question of fact intended to be decided by a jury and should not be decided on a motion to dismiss when the plaintiff's claim has some merit. Butler, 557 A.2d at 736. See also Brown v. Lewis, 865 F.Supp.2d 642, 649 (E.D.Pa. 2011)(denying a motion to dismiss when plaintiff made plausible arguments civil rights violations were not within the scope of employment). For these reasons, Dr. Reynolds's sovereign immunity argument has no merit.

### B. Count III – Intentional Infliction of Emotional Distress

Dr. Reynolds also argues that Count III (Intentional Infliction of Emotional Distress) is inadequate to state a claim. To sufficiently plead a claim for Intentional Infliction of Emotional Distress (IIED) under Pennsylvania law, a plaintiff must demonstrate that a person intentionally or recklessly caused her severe emotional distress through "extreme or clearly outrageous" conduct. Andrews v. City of Phila., 895 F.2d 1469, 1486-87 (3d Cir. 1990)(citing Cox v. Keystone Carbon, 861 F.2d 390, 395 (3d Cir.1988)). See Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Cmwlth. 2010). In order for sexual harassment to rise to the requisite level of outrageousness to make out such a claim, the harassment must be coupled with retaliatory actions for turning down sexual propositions. Andrews, 895 F.2d at 1487.

Accepting the plaintiff's allegations in her complaint as true for the purpose of this motion, the plaintiff's complaint establishes the required elements to make out a prima facie claim of IIED. Dr. Reynolds's unwanted sexual advances could plausibly be considered sexual harassment; the resulting prohibitions placed on the plaintiff's

academic study after her complaint against him could be seen as retaliatory.[14] See Bowersox v. P.H. Glatfelter Co., 677 F.Supp. 307, 311-12 (M.D.Pa. 1988)(finding that allegations of sexual harassment coupled with retaliatory acts that prevented plaintiff from doing her job were enough to overcome a motion to dismiss an IIED claim); Borreggine v. Messiah College, No. 1:13–cv–01423, 2013 WL 6055214, at *3-4 (M.D.Pa. Nov. 15, 2013)(finding that defendant's removal of plaintiff from the lacrosse team and instruction to her teammates that they cease communications with her was enough to constitute outrageous behavior for an IIED claim at the motion to dismiss stage).

## IV. CONCLUSION

For the reasons explained above, I will deny Dr. Reynolds's motion to dismiss Counts II and III.

An appropriate Order follows.

---

[14] Kutztown contends that the restrictions on the plaintiff were instituted simply because she had asked to not have contact with Dr. Reynolds. See Doc. No. 11. While there may be some dispute as to the reason why the plaintiff was prohibited from engaging in activities related to her chosen course of study, her pleading is enough to allow this dispute to be explored further in discovery.